UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARK KRIVOI,

                        Plaintiff,

      -against-

CITY OF NEW YORK, et al.,

                        Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-5169 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Mark Krivoi brings this action against Defendants the City of New York (the "City"), the Kings County District Attorney's Office ("KCDA"), and Safe Horizon, Inc. ("Safe Horizon"). Plaintiff brings claims against Defendants for violations of his due process rights under the Fifth and Fourteenth Amendments and New York State Constitution, claims of false arrest and false imprisonment under federal and state law, violations of 42 U.S.C §§ 1983 and 1988, claims of malicious prosecution, negligence, negligent misrepresentation, and negligent infliction of emotional distress. (Am. Compl. (Dkt. 21).)

      The City moves to dismiss Plaintiff's federal law claims pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiff has not adequately pleaded a claim for municipal liability against the City. (City Mot. to dismiss ("Mot.") (Dkt. 30); City Mem. in support of Mot. to Dismiss ("Mem. in Supp. Of Mot.") (Dkt. 31).) The undersigned referred the City's motion to Magistrate Judge Cheryl L. Pollak for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (July 24, 2017, Order.) On March 16, 2018, Judge Pollak issued an R&R recommending that the court deny the City's motion. (R&R (Dkt. 39) at 2.) The City timely objected to the R&R and Plaintiff timely responded to the City's objections. (City Objs. to R&R ("City Objs.") (Dkt. 40); Pl. Opp'n to

1

City Objs. ("Pl. Opp'n to City Objs.") (Dkt. 43)).) For the following reasons, the R&R is ADOPTED IN PART and REJECTED IN PART, and the City's motion to dismiss is GRANTED.

I. BACKGROUND

The R&R clearly sets forth the background of this case (R&R at 2-4), and the parties have not objected to Judge Pollak's statement of facts and procedural history. The court thus adopts the R&R in this respect and offers the following summary to guide the analysis below. See Dong v. Miller, 16-CV-5836 (NGG), 2018 WL 1445573, at *2 (E.D.N.Y. Mar. 23, 2018) (adopting the R&R's statement of facts because the parties had not objected to it).

A. Facts

Plaintiff alleges that the City and Safe Horizon entered into an agreement whereby Safe Horizon would collect restitution payments on behalf of the City's criminal courts and the New York State Supreme Court. (Am. Compl. ¶ 15.) Under the contract, Safe Horizon is required to "report the status of individual cases to the criminal courts in each county." (Id. ¶ 16.) Plaintiff alleges that the City and Safe Horizon have a "custom and policy" whereby Safe Horizon does not "actively inform the City of when restitution payments are made." (Id. ¶ 17.)

Plaintiff alleges that, on November 3, 2015, he was detained at the 94th Precinct of the New York Police Department ("NYPD") when a detective advised him that there was an outstanding bench warrant for his arrest, based on his previous failure to pay $105 dollars in restitution in an unrelated matter. (Id. ¶¶ 19-20.) Plaintiff disputed that he had failed to pay this restitution. (Id. ¶ 21.)[1] Despite Plaintiff's objections, he was arrested and held in jail until his arraignment for failure to pay the restitution. (Id. ¶ 22.) Plaintiff alleged that the detective

---

[1] Plaintiff alleges that on April 11, 2013, he paid the full restitution amount to Safe Horizon and thereafter provided a copy of his receipt evidencing payment the court clerk in the underlying matter. (Am. Compl. ¶¶ 26-27.)

2

informed him that, without the outstanding warrant, he would have received a desk appearance ticket and been released that day. (Id. ¶ 23.)

At arraignment, Plaintiff denied the allegation that he had failed to pay restitution within the timeframe established by the court for the prior charge. (Id. ¶ 25; see id. ¶ 24.) Plaintiff was then placed in jail "based on the incorrect representations" that the restitution had not been paid. (Id. ¶ 28.)

On November 9, 2015, following six days in jail at Rikers Island, the court ordered that Plaintiff be released and scheduled a court date to determine the legitimacy of the outstanding warrant.[2] (Id. ¶ 29.) Plaintiff alleges that KCDA failed to investigate whether Plaintiff had, in fact, paid his restitution, and this failure was a result of a custom and policy "whereby it did not and does not take any affirmative action to verify whether an accused defendant who contested that he had paid his restitution has in fact done so." (Id. ¶¶ 30-31.) At the court's direction, Plaintiff's counsel went to "the General Clerk's office in the Kings County Criminal Court" and inquired as to whether there was any record of Plaintiff having paid the restitution related to the alleged warrant. (Id. ¶ 37.) The Clerk twice informed Plaintiff's counsel that there was no record of Plaintiff ever having paid the restitution and advised Plaintiff's counsel to contact Safe Horizon. (Id.) After contacting Safe Horizon several times and being told that they have no record of Plaintiff paying the restitution amount, Plaintiff's counsel obtained a subpoena ordering Safe Horizon to produce Plaintiff's file. (Id. ¶¶ 38-40.) Safe Horizon produced the file, which indicated that Plaintiff had indeed paid the restitution in full. (Id. ¶ 41.) On March 3, 2016, the court dismissed the outstanding warrant upon reviewing the documents that Plaintiff's counsel obtained from Safe Horizon. (Id. ¶ 43.)

---

[2] Plaintiff alleges that during his incarceration, he witnessed numerous assaults and threats that caused him mental and emotional distress. (Am. Compl. ¶¶ 36, 51.)

3

B.  Procedural History

Plaintiff commenced this suit on September 16, 2016, (Compl. (Dkt. 1)), and amended his complaint on April 21, 2017 (Am. Compl). In his amended complaint, Plaintiff alleges claims of federal and state due process violations, false arrest and false imprisonment, malicious prosecution, negligence, negligent misrepresentation, negligent infliction of emotional distress, and asserts municipal liability against the City. (Id. ¶¶ 52-110.) Plaintiff seeks compensatory and punitive damages as well as attorneys' fees and costs. (Id. at pp. 14-15.)

The City moved to dismiss all claims against it (Mot.; Mem. in Supp. Of Mot.), and in the R&R, Judge Pollak advised that the City's motion should be denied and further recommended that Plaintiff be granted leave to amend his complaint a second time to clarify his allegations regarding a potential failure to train and supervise claim. (R&R at 28.)

The City timely objects to the R&R's recommended finding that Plaintiff has adequately pled a claim for municipal liability. (City Objs.) Specifically, the City asserts that Plaintiff's amended complaint lacks factual allegations necessary to support the existence of a municipal policy or custom, and that Plaintiff's amended complaint pleads only negligence, rather than intentional conduct on the part of the City. (Id. at 3). Additionally, the City objects to the recommendation that Plaintiff be allowed to amend his complaint for a second time. (Id. at 3-4.)

II.  STANDARDS OF REVIEW

A.  Review of a Magistrate Judge's R&R

In reviewing an R&R from a magistrate judge regarding a dispositive motion, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Romero v. Bestcare Inc., No. 15-CV-7397 (JS), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017) (citation and quotation marks omitted); see Impala v. U.S. Dep't

4

of Justice, 670 F. App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision . . . ." (citation and quotation marks omitted)); Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the [R&R] has been filed, the district court need only satisfy itself that there is no clear error on the face of the record." (citation and internal quotation marks omitted)). "A decision is 'clearly erroneous' when the [c]ourt is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (alteration adopted) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)).

The district court must review de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). To obtain this de novo review, an objecting party "must point out the specific portions of the [R&R]" to which objection is made. Sleepy's LLC v. Select Comfort Wholesale Corp., 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citation and quotation marks omitted); see also Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)").

B.  Motion to Dismiss

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation and internal quotation marks omitted).

III. DISCUSSION

A.  Clear Error Review

No party has objected to Judge Pollak's findings that (a) the City and Safe Horizon are participants in joint activity on behalf of the City and thus Plaintiff has adequately alleged state

6

action (R&R at 9); (b) KCDA is not a suable entity and therefore the court should construe the allegations against KCDA as claims against the City (R&R at 12 n.6); and (c) Plaintiff's failure to name an individual actor does not require dismissal of the municipal claims (R&R at 26-27). Accordingly, the court reviews the R&R's analysis of those claims for clear error. Finding none, the court adopts the R&R in these respects.

### B. De Novo Review of the City's Objections

#### 1. Municipal Liability

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). "[T]o hold a city [or municipal actor] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (alteration in original) (quotations and citation omitted). The "policy or custom" requirement may be satisfied by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Skates v. Inc. Village of Freeport, 265 F. Supp. 3d 222, 235 (E.D.N.Y. 2017). A plaintiff bringing a § 1983 claim for municipal liability also must establish a causal connection between the municipality's official policy and the underlying constitutional violation. See Stern v. City of New York, No. 12-CV-5210 (NGG), 2015 WL 3827653, at *5 (E.D.N.Y. June 19, 2015).

7

Plaintiff alleges that the City entered into a contract with Safe Horizon in which Safe Horizon collects restitution payments on behalf of the City's criminal courts and the State Supreme Courts located within the City. (Am. Compl. ¶ 15.) The contract requires Safe Horizon to report the status of individual cases, including whether restitution has been paid as ordered, to these courts. (Id. ¶ 16.) Plaintiff alleges that Safe Horizon has a "custom and policy whereby it did not and does not take any affirmative action to verify whether an accused defendant who contested that [they] had paid [their] restitution has in fact done so." (Id. ¶ 33.) Plaintiff further alleges that Safe Horizon "maintained said policy with the knowledge and consent of the City." (Id. ¶ 34.)

In connection with this contractual agreement, Plaintiff alleges that KCDA had a custom and policy whereby "it did not and does not take any affirmative action to verify whether an accused defendant who contested that he had paid his restitution has in fact done so" and that such a policy was "maintained with the knowledge and consent of the City." (Id. ¶¶ 31-32.) These policies, both individually and taken together, are alleged to have caused violations of Plaintiff's constitutional and statutory rights, specifically, false arrest and false imprisonment, malicious prosecution, and due process violations. (Id. ¶ 1.)

Judge Pollak found that Plaintiff had made sufficient allegations to suggest that Plaintiff's alleged constitutional violations are "based on a custom or usage so widespread to be considered a custom or usage in which Safe Horizon and the City of New York have acquiesced." (R&R at 20.) The City objects, arguing that the R&R "contains no discussion whatsoever of the total absence of a factual basis for [P]laintiff's municipal liability claim." (City Objs. at 5.) The court agrees with the City and therefore dismisses Plaintiff's claim of municipal liability against the City.

### a) *Custom or Usage*

Plaintiff seeks to establish that Safe Horizon, the City, and KCDA have a custom or usage under which its employees or agents do not inquire into protestations that its system does not accurately reflect restitution payments made. (See R&R at 20.) In support of this claim, Plaintiff alleges that: (1) "the City and Safe Horizon have a custom and policy in which Safe Horizon does not actively inform the City of when restitution payments are made" (Am. Compl. ¶ 17); (2) "KCDA had a custom and policy whereby it did not and does not take any affirmative action to verify whether an accused defendant who contested that he had paid his restitution has in fact done so" (id. ¶ 31); (3) "KCDA maintained said policy with the knowledge and consent of the City" (id. ¶ 32); and (4) "Upon information and belief, Safe Horizon had a custom and policy whereby it did not and does not take any affirmative action to verify whether an accused defendant who contested that he had paid his restitution has in fact done so" (id. ¶ 33).

Plaintiff's claims against the City are simply too conclusory to plausibly support his claim for municipal liability. See Iqbal, 556 U.S. at 678. Although Plaintiff broadly asserts that the City, Safe Horizon, and KCDA maintain a policy and practice of failing to adequately verify and report restitution payments, Plaintiff fails to allege any facts to support these naked and speculative allegations. Indeed, Plaintiff's amended complaint is devoid of any examples of a "chronic and widespread failure" which could plausibly allege a custom or policy necessary to establish municipal liability. Pelt v. City of New York, 11-CV-5633 (KAM), 2013 WL 4647500, at *16 (E.D.N.Y. Aug. 28, 2013); see also Troy v. City of New York, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *12 (S.D.N.Y. Sept. 25, 2014), aff'd, 614 F. App'x 32 (2d Cir. 2015); Cooper v. City of New York, No. 12-CV-8008 (SAS), 2013 WL 5493011, at *2, *7 (S.D.N.Y. Oct. 2, 2013) (dismissing Monell claim based in part on failure to properly screen

police officers where complaint consisted of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (quoting Iqbal, 556 U.S. at 663)); Johnson v. City of New York, 06-CV-9426 (GBD), 2011 WL 666161, at *4 (S.D.N.Y. Feb. 15, 2011) ("Plaintiff never alleges that any of these single incidents occurred more than once. Plaintiff also never alleges that NYPD personnel have been responsible for similar incidents in the past.").

Furthermore, the parties disagree whether a single instance of misconduct can prove a custom or policy for purposes of municipal liability. (Compare City Objs. at 7-9 with Pl. Opp'n to City Objs. at 8.) Plaintiff argues that, by claiming that KCDA failed to determine if Plaintiff had paid his restitution payment prior to issuing a warrant for his arrest, he has sufficiently alleged actual conduct by a municipal policymaker "sufficient to establish municipal liability against the City." (Pl. Opp'n to City Objs. at 9 (citation and internal quotation marks omitted).) With this claim, Plaintiff seems to argue that the City can be held liable under the second method of Monell liability: actions taken or decisions made by policymakers that caused a deprivation of his rights.

While it is true that actions by an individual with decision making authority may constitute official policy, that individual must "be responsible for establishing final government policy" in order for the liability to attach. Pembaur v. City of Cincinnati, 475 U.S. 469, 482-83 (1986). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (citations omitted); see also City of Canton v. Harris, 489 U.S. 378, 399 (1989). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by

an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (emphasis added).

Here, Plaintiff has failed to allege sufficient facts plausibly establishing that KCDA promulgated the supposed policy Plaintiff seeks to challenge. Plaintiff alleges that "KCDA had a custom and policy whereby it did not and does not take any affirmative action to verify whether an accused defendant who contested that he had paid his restitution has in fact done so" (Am. Compl. ¶ 31), and that "KCDA maintained said policy with the knowledge and consent of the City" (Id. ¶ 32). For the same reasons discussed above, these mere assertions that KCDA had a custom and policy not to verify restitution payments, without more, are simply not enough to allege that KCDA is responsible for setting the alleged custom or policy, even at the pleading stage. See, e.g., Hurdle v. Bd. of Educ., 113 F. App'x 423, 427 (2d Cir. 2004) ("Even if [defendant] was the decisionmaker with regard to [plaintiff's] transfer, that does not establish that she had the authority to set the policy authorizing involuntary employee transfers."); Rubino v. Town of Babylon, 09-CV-5187 (DRH), 2012 WL 928252, at *4 (E.D.N.Y. Mar. 19, 2012).

The cases on which Plaintiff relies in his opposition to the City's objections also make clear that the underlying policy must be set and executed by the official policy maker in order to hold the City entity liable under such a theory. (Pl. Opp'n to City Objs at 8-9). See, e.g., Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) ("Plaintiffs have failed, however, to allege any facts to support their contention that the challenged actions were in any way related to a custom or policy promulgated by the New York County District Attorney's Office."); Jones v. City of New York, 988 F. Supp. 2d 305, 316 (E.D.N.Y. 2013) ("The peculiar, but necessary, consequence is that the City is a proper municipal party in interest in a Monell claim based on policies or customs independently set and executed by the district

11

attorney." (emphasis added)); Johnson v. Kings Cty. Dist. Attorney's Office, 763 N.Y.S. 2d 635, 648 (App. Div. 2003) ("We find that a 42 U.S.C § 1983 claim may be maintained against the City for the conduct of the District Attorney's Office, insofar as the District Attorney acted as a New York City policymaker." (emphasis added)).

In sum, Plaintiff cannot establish that the City had a custom or policy of not accurately reporting and verifying restitution payments made. Accordingly, the City is entitled to dismissal on Plaintiff's municipal liability claim.

### b) Failure to Allege Intentional Conduct

In order to establish municipal liability, Plaintiff must also adequately allege the existence of an underlying constitutional violation. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (citations omitted) ("Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

Judge Pollak found that Plaintiff "has adequately alleged constitutional violations" that suffice to withstand a motion to dismiss at this stage. (R&R at 20.) The City argues that Judge Pollak's R&R failed to address the argument in its motion to dismiss that Plaintiff did not allege the necessary requirement of intent for his underlying constitutional claims. (City Objs. at 13.) The cases upon which the R&R relies, however, find that municipal liability for the underlying constitutional violations still requires a finding that a municipal policy was responsible for the deprivation of the constitutional rights. See, e.g., Owen v. City of Independence, 445 U.S. 622, 633 (1980). Because this court has already found that Plaintiff has failed to allege a custom or

policy necessary to attach municipal liability, the court need not consider whether the underlying violations adequately plead intentionality.

2. <u>Leave to Amend the Complaint</u>

In opposing the City's motion to dismiss, Plaintiff states that he alternatively "has a cause of action against the City for failure to train or supervise its employees," but acknowledges that he has not yet pleaded such a claim. (Pl. Opp'n to Mot. (Dkt. 33) at 13.) The City opposed Plaintiff's attempt to raise a new cause of action in their opposition. (City Reply in Supp. of Mot. (Dkt. 35) at 8.)

In the R&R, Judge Pollak acknowledged that "a party may amend its pleading only with the opposing party's written consent or the court's leave." (R&R at 27) (quoting Fed. R. Civ. P. 15(a)(2)).) The R&R found, however, that "the facts necessary to support a cause of action for failure to train and failure to supervise" are alleged in the amended complaint and therefore recommended that Plaintiff be granted leave to amend his complaint for a second time to "clarify and amplify the claim of failure to train and failure to supervise against the City of New York in connection with its policy of delegating supervision of restitution payments to Safe Horizon." (<u>Id.</u> at 27-28.) The City objects to this part of Judge Pollak's R&R "because the facts necessary to support such a cause of action are <u>not</u> alleged in the Amended Complaint." (City Objs. at 9.). This court agrees with the City and therefore does not grant Plaintiff leave to amend the complaint.

Failure to train or supervise city employees may constitute an official policy or custom supporting <u>Monell</u> liability if the failure amounts to "deliberate indifference" to the rights of those with whom the city employees interact. <u>Harris</u>, 489 U.S. at 388. In establishing deliberate indifference, the "operative inquiry is whether the facts suggest that the policymaker's inaction

13

was the result of a conscious choice rather than mere negligence." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 128 (2d. Cir. 2004) (internal quotation marks omitted). Thus, a plaintiff must show that "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Id (citation and internal quotation marks omitted). Plaintiff states multiple times in his amended complaint that the actions were a result of Defendants' negligence, not deliberate indifference. (See, e.g., Am. Compl. ¶ 44 ("It was the error and negligence of the Defendants that caused Plaintiff to be incarcerated for that same time period."); id. ¶ 45 ("Safe Horizon incorrectly and negligently advised the Court and Mr. Krivoi that he did not pay the One Hundred Five dollars ($105.00) in restitution, resulting in his illegal incarceration"); id. ¶ 97 ("Safe Horizon's foregoing negligence and breach of duty was the proximate cause of Mr. Krivoi's injuries.").) Because the amended complaint itself acknowledges the actions were allegedly a result of negligence, Plaintiff fails to allege facts to make out a Monell claim for failure to train or supervise. See Martin v. City of New York, 11-CV-02862 (ENV), 2012 WL 4569757, at *3 (E.D.N.Y. Sept. 29, 2012). The court therefore respectfully declines to follow Judge Pollak's recommendation to grant Plaintiff leave to amend the complaint.

## IV. CONCLUSION

For the foregoing reasons, the court ADOPTS IN PART and REJECTS IN PART the R&R (Dkt. 39). The City's Motion to Dismiss (Dkt. 30) is GRANTED. The Clerk of Court is respectfully DIRECTED to enter judgment for the City.

SO ORDERED.

Dated: Brooklyn, New York
October 22, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge